conclusion the court cannot assent. If the written clause were so express and plain, as to leave no doubt that such was the intention of the parties; and if it appeared that the defendants were fully informed as to the nature of the first insurance, this clause would control the printed clause, important as it is considered by all the insurance offices in this city. Every presumption is against such an intention, and the evidence to prove it ought to be extremely clear and strong. The words, "every pound of coffee shipped, or to be shipped," taken in reference to the words in the order, "valued, as far as respects this risk, at twenty-two cents per pound," and so stating the amount from which the 12,000 dollars was to be deducted, amounted to so plain a declaration that the cargo had been previously valued at twenty-two cents per pound, as to leave no doubt concerning the intention of the defendants, at least, if not that of the plaintiff. But it is said that the defendants, having been apprized of the first insurance, were bound to examine it, or to take the consequences of their negligence in not doing so. But we answer, that if, in any case, the underwriters are, upon such information, bound to run from office to office to examine papers thus referred to, they were not bound to do so in this case; when the plaintiff spoke a language respecting the nature of the first policy, if not too plain to be misconstrued, yet such at least as was sufficient to mislead. The order of insurance plainly intimates that only 12,000 dollars were to be deducted from the whole amount of the cargo, whereas it is admitted that in case of loss, the first underwriter would, upon abandonment, have been entitled to so much of the cargo as 12,000 dollars would have absorbed, at prime cost and charges; and the plaintiff would have been entitled to claim the value of the same proportion of the cargo. The defendants, therefore, were clearly misled by the manner in which the first insurance was represented to them. If these were the rights of the parties under the first policy, it follows, that so much of the cargo was covered thereby, as 12,000 dollars would purchase at prime cost and charges; and consequently the second policy, in respect thereto, was, by the terms of it, void. The defendants, then, are answerable only for so much of the coffee as remains after this deduction is made, at the price of twenty-two cents per pound. Upon the happening of the loss, the plaintiff could certainly have abandoned no more to the defendants, which proves that no more was insured. It is unnecessary to decide, whether an underwriter may, by an express agreement made at the time the contract of insurance is concluded, bind himself to run the risk of a technical total loss, and yet relinquishing all his right to the thing insured, should any thing be saved; because, in this case, there is nothing which, in any respect, amounts to such an agreement.

This argument on the part of the defendants, cannot be got rid of by the agreement of the Philadelphia Insurance Company, after the loss, to waive all their right to the property which might be saved; because, at the time this policy was signed, it was, by the terms of it, void, except as to the property uncovered by the first; and no future circumstance could give it life, as to the other property, without the consent of the other party to the contract.

McKIM (SWATARA R. CO. v.). See Case No. 13,681.

McKIM (UNITED STATES v.). See Case No. 15,693.

## Case No. 8,863.
### McKINDER et al. v. DUNLAP.
[1 Cranch, C. C. 584.] [1]
Circuit Court, District of Columbia. Nov. Term, 1809.

CHECK—DEMAND OF PAYEE—INSOLVENCY OF DRAWER—PRESUMPTION.

If the drawer and payee of a check upon a bank reside in the town where the bank is, and the drawer be insolvent: the jury cannot, in law, infer from those facts, that the plaintiffs had used due diligence in demanding payment, and giving notice to the defendant.

The plaintiffs [McKinder & Guilliat] offered in evidence a check drawn by the defendant [Samuel Dunlap] upon the bank at Norfolk.

Mr. Jones, for defendant, contended that in order to charge the defendant, the plaintiffs must prove that they demanded payment from the bank; and gave notice to the defendant in reasonable time.

Mr. Taylor, for plaintiffs, offered to prove that the plaintiffs and defendant lived in Norfolk; that the bank was in Norfolk and solvent; and that the defendant was insolvent; and contended that the jury might infer from these facts that the plaintiffs had used due diligence in demanding payment from the bank and giving notice to the defendant.

But THE COURT was of opinion and so instructed the jury that they could not, in law, make that inference.

## Case No. 8,864.
### In re McKINLEY.
[7 Ben. 562.] [2]
District Court. S. D. New York. Jan., 1875.

BANKRUPTCY—ADJUDICATION—SETTING ASIDE—JURISDICTION.

1. A petition in bankruptcy against McK., regular on its face, was filed. A proper case was

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]